[Cite as *Lima Mem. Hosp. v. Almudallal*, 2016-Ohio-5177.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

LIMA MEMORIAL HOSPITAL,

      PLAINTIFF-APPELLEE,              CASE NO.  1-16-05

      v.

ALI ALMUDALLAL M.D.,

      DEFENDANT-APPELLEE.         O P I N I O N

[ST. RITAS MEDICAL CENTER -
INTERVENOR-APPELLANT]

LIMA MEMORIAL HOSPITAL,

      PLAINTIFF-APPELLEE,              CASE NO.  1-16-11

      v.

ALI ALMUDALLAL M.D.,

      DEFENDANT-APPELLEE.         O P I N I O N

[ST. RITAS MEDICAL CENTER -
INTERVENOR-APPELLANT]

**Appeals from Allen County Common Pleas Court
Trial Court No. CV20150329**

**Judgments Affirmed**

**Date of Decision:   August 1, 2016**

Case Nos. 1-16-05, 1-16-11

---

**APPEARANCES:**

*Aaron L. Bensinger* **for Appellee, St. Rita's Medical Center**

*Gerardo Opie Rollison* **for Appellee, Lima Memorial Hospital**

**ROGERS, J.**

**{¶1}** Intervenor-Appellant, St. Rita's Medical Center ("St. Rita's"), appeals the decision of the Court of Common Pleas of Allen County denying its motion for an amended protective order and the decision granting Plaintiff-Appellee, Lima Memorial Hospital's ("Lima Memorial"), motion to compel. For the reasons that follow, we affirm the judgments of the trial court.

**{¶2}** On June 1, 2015, Lima Memorial filed a complaint in the Court of Common Pleas of Allen County against Defendant-Appellee, Dr. Ali Almudallal, alleging one count of tortious interference with contract.[1] The facts underlying the claim were that Lima Memorial and St. Rita's formed a contractual relationship in which both parties agreed to hire doctors through a specific entity. Moreover, Lima Memorial alleged that Dr. Almudallal enticed St. Rita's to break the contract by directly hiring him as a neurologist.

---

[1] Although Dr. Almudallal has been designated as an Appellee, he has not filed a brief in this appeal and has otherwise not participated in this appeal.

{¶3} On June 19, 2015, Lima Memorial served a Subpoena for production of documents upon St. Rita's with a return date of July 8, 2015.

{¶4} On July 1, 2015, Lima Memorial filed its first amended complaint, which alleged the same cause of action against Dr. Almudallal.

{¶5} On July 2, 2015, St. Rita's filed a motion to intervene arguing that it was a true party in interest with respect to the issues raised in Lima Memorial's complaint. St. Rita's contemporaneously filed a motion to compel arbitration and a request for attorney fees.

{¶6} Dr. Almudallal filed his answer to Lima Memorial's first amended complaint on the same day.

{¶7} On July 10, 2015, Lima Memorial filed its response in opposition of St. Rita's motion to intervene. The same day, Lima Memorial also filed its response in opposition to St. Rita's motion to compel arbitration.

{¶8} St. Rita's filed an amended motion to intervene on July 14, 2015. St. Rita's attached a copy of a proposed complaint for declaratory judgment.

{¶9} Lima Memorial filed its response in opposition to St. Rita's amended motion to intervene on July 27, 2015.

{¶10} On July 29, 2015, the trial court filed an agreed protective order between Lima Memorial and St. Rita's. In the order, "Confidential Information" was defined as

all material, things or information which the producing party in good faith considers to contain or to constitute trade secrets, or other confidential research, development, proprietary or commercial information which has been so designated by the producing party, and any copies, abstracts, excerpts, or summaries of such information. Confidential Information shall not be filed of public record or used for any purpose not approved herein.

(Docket No. 23, p. 2). Further, the only people who could view "confidential information" were designated as "Qualified Persons." "Qualified Persons" were limited to

The Board of either party, but only as necessary, to facilitate evaluation of this Civil Action;

Inside or outside counsel for the Parties, including members of such attorney's staff (e.g., paralegals, legal secretaries, and law clerks) who have a need to know;

Prospective witnesses who, in the judgment of counsel for a party, require the Confidential Information for the purpose of preparing their testimony;

Consultants and experts retained by the parties in this Civil Action to assist in this Civil Action, and their respective staff;

The Court and Court personnel; and

Court reporters selected by the parties.

(*Id.* at p. 4). The agreed protective order also provided that confidential information shall only be used in this case and not for "any commercial, business, competitive, or other purposes, or in or for any other judicial or administrative proceedings, disputes, or cases, unless a court order is issued to the contrary." (*Id.*

at p. 3). If confidential information was to be disclosed to a qualified person, then the qualified person would have to sign a non-disclosure agreement before the information would be disclosed to him or her. The agreed protective order would survive the final conclusion of the case and the trial court retained jurisdiction over the parties and any person bound by the agreed protective order. Further, anyone who violated the agreed protective order would be subject to sanctions by the court, including civil contempt. Finally, the order was without prejudice and either party could apply at a later date for additional protection. However, first, the parties needed to conference and negotiate in good faith before filing a motion for additional protection.

{¶11} On July 31, 2015, the trial court denied St. Rita's motions to intervene and compel arbitration.

{¶12} On August 25, 2015, Dr. Almudallal filed a motion for judgment on the pleadings pursuant to Civ.R. 12(B)(6) and (12)(C).

{¶13} St. Rita's filed its notice of appeal of the court's July 31, 2015 entry denying its motions to intervene and compel arbitration on August 27, 2015.

{¶14} On September 4, 2015, Lima Memorial filed its response in opposition to Dr. Almudallal's motion for judgment on the pleadings.

{¶15} On September 11, 2015, St. Rita's filed a motion to stay proceedings pending this court's decision on its appeal.

{¶16} That same day, Dr. Almudallal filed his reply in support of his motion for judgment on the pleadings.

{¶17} On September 15, 2015, Lima Memorial filed a motion for an order striking Dr. Almudallal's reply or, in the alternative, for leave to file a sur-reply. That same day, Lima Memorial filed a motion for leave to file its second amended complaint instanter. Lima Memorial also filed its response in opposition to St. Rita's motion to stay proceedings.

{¶18} On September 28, 2015, the trial court filed an entry ordering that both Dr. Almudallal's motion for judgment on the pleadings and St. Rita's motion to stay were moot as both withdrew their respective motions. In two separate orders filed on the same day, the trial court granted Lima Memorial's motions to file its sur-reply and to file its second amended complaint.

{¶19} That same day, Lima Memorial filed its sur-reply to Dr. Almudallal's motion for judgment on the pleadings and its second amended complaint. In addition to the tortious interference with contract count, Lima Memorial alleged two additional counts: Violation of the Uniform Trade Secrets Act and Interference with a Business Relationship.

{¶20} On October 6, 2015, this court dismissed St. Rita's appeal.

{¶21} Dr. Almudallal filed a motion to dismiss Lima Memorial's second amended complaint on October 9, 2015. That same day, Dr. Almudallal filed a motion to stay discovery pending his motion to dismiss.

{¶22} Lima Memorial Filed its response in opposition to Dr. Almudallal's motion to stay discovery on October 16, 2015.

{¶23} On October 23, 2015, Lima Memorial filed its response in opposition to Dr. Almudallal's motion to dismiss the second amended complaint.

{¶24} That same day, St. Rita's filed a motion for an order compelling Lima Memorial to show cause as to why it should not be held in contempt for violating the agreed protective order.

{¶25} Also that day, Dr. Almudallal filed a motion for leave to file his reply in support of his motion to stay discovery. He attached a copy of his proposed reply as an exhibit.

{¶26} On October 27, 2015, the trial court denied Dr. Almudallal's motion to dismiss the second amended complaint.

{¶27} On October 30, 2015, Dr. Almudallal filed a motion for leave to file his reply in support of his motion to dismiss the second complaint. He attached a copy of his proposed reply as an exhibit.

**{¶28}** The trial court denied Dr. Almudallal's motion for leave on November 4, 2015, stating that the trial court had already denied the motion to dismiss on October 27, 2015.

**{¶29}** On November 5, 2015, Lima Memorial filed its response in opposition to St. Rita's motion for an order compelling Lima Memorial to show cause as to why it was not in violation of the agreed protective order.

**{¶30}** On November 10, 2015, the trial court denied St. Rita's motion to show cause.

**{¶31}** That same day, Dr. Almudallal filed his answer to St. Rita's second amended complaint.

**{¶32}** On December 7, 2015, an amended agreed protective order was signed by Lima Memorial, St. Rita's, and the trial court, which was similar in substance, but also stated that the protective order governed settlement negotiations as well. The protective order was filed the next day.

**{¶33}** On December 23, 2015, Lima Memorial filed a motion to compel.

**{¶34}** On January 11, 2016, St. Rita's filed a motion to amend the protective order to include an "Attorneys Eyes Only" ("AEO") designation. Specifically, St. Rita's argued two points as to why good cause existed that required the AEO designation. The first was that St. Rita's and Lima Memorial were competitors in a small market, and the second was that the information

sought by Lima Memorial contained competitively-sensitive information regarding St. Rita's recruitment process, St. Rita's physician compensation rates, and a list of those physicians being sought or previously sought to be employed by St. Rita's.

{¶35} Regarding the first point, St. Rita's argued that the (then) current protective order did not adequately protect certain highly sensitive information from the eyes of Lima Memorial's Board of Directors, CEO, and any other qualified person under the order. St. Rita's argued that once these people learned of this information it would be impossible to un-ring the doorbell when it came time for Lima Memorial to make business decisions outside of this litigation.

{¶36} Regarding the second point, St. Rita's argued that the information sought was highly valuable to St. Rita's and that it had spent significant amounts of time and money in acquiring the information. St. Rita's listed several ways in which Lima Memorial could use the information to hurt St. Rita's business. It argued that the type of information sought was typically not disseminated throughout employees at St. Rita's, but was rather only provided on a need to know basis. St. Rita's attached several documents as exhibits, including a proposed copy of the new amended agreed protective order and the affidavits of Ronda Lehman, St. Rita's Chief Operating Officer, and Michael Mayer, one of the attorneys representing St. Rita's.

{¶37} In St. Rita's proposed protective order, a new class of documents, named "Highly Confidential Information," was created. "Highly Confidential Information" was defined as

> all documents, material, things or information that the producing Party in good faith considers to contain or to constitute competitively sensitive technical, business, financial, competitive, or personnel information, which is not generally known by third parties and that the Producing Party would not normally reveal to third parties or would cause third parties to maintain in confidence either by agreements, policies, or procedures.

(Docket No. 76, Ex. 1, p. 2). Under the proposed order, any document classified by the producing party as "Highly Confidential" would be labeled AEO. Any documents that the producing party had already produced but considered highly confidential would be designated "Highly Confidential Information," even though the documents would not be subject to the AEO designation. St. Rita's proposed that while the same people designated as "Qualified Persons" in the amended protective order would still be able to observe "Confidential Information" under their proposed order, only the following people would be able to view "Highly Confidential Information" under the proposed order:

> The Court, including court personnel, any court exercising appellate jurisdiction over this Civil Action, and stenographers transcribing a deposition;
>
> Outside counsel of record in this Civil Action for a receiving Party and employees of such attorneys and law firms to whom it is necessary that the material be shown for purposes of this Civil Action;

Independent technical experts, consultants, investigators, or advisors of a receiving Party, who are qualified by knowledge, skill, experience, training or education and retained by outside counsel to assist in the preparation or trial of this Civil Action and to whom it is necessary that the information be disclosed, and who have signed a Declaration in the form of [a non-disclosure agreement];

Document contractors, electronic discovery contractors, exhibit contractors, graphic art contractors, and jury consultants who are engaged to assist in the preparation of trial of this Civil Action and to whom it is necessary that the material be shown for purposes of this Civil Action, and who have signed a Declaration in the form of [a non-disclosure agreement];

Potential witnesses to the extent the Highly Confidential Information was authored by or addressed to the person or such person is established as knowledgeable of such information prior to disclosing the Highly Confidential Information.

(*Id.* at p. 6). The remainder of the proposed protective order was similar to the (then) current order.

{¶38} In Lehman's affidavit, she testified that competitors, such as Lima Memorial, can use the type of information sought from St. Rita's in ways that could result in great harm to St. Rita's. Lehman provided a list of ways in which a competitor could harm St. Rita's, including

blocking or hindering [St. Rita's] potential business acquisitions; blocking or hindering [St. Rita's] recruitment efforts; improving its own recruitment efforts; copying [St. Rita's] business methods that [St. Rita's] has invested time and money to develop; determining whether [St. Rita's] is prospering or failing in various practice areas (and therefore avoid, enter, increase or decrease its efforts in those practice areas); knowing exactly who [St. Rita's] patients and referring providers are and contacting those patients and referring

providers with direct marketing efforts in an effort to 'steal' those patients and referrals sources; offering [St. Rita's] physicians better compensation than what they are receiving at [St. Rita's] in order to get them to leave [St. Rita's]; learning the practice areas in which [St. Rita's] may be interested in developing, contracting, or expanding, so that it can make strategic decisions on what it wants to do in response; learning which doctors [St. Rita's] has evaluated or is evaluating so that it can make strategic decisions on what to do for its recruitment efforts and whether to pursue or ignore those physicians (or interfere with [St. Rita's] recruiting efforts); and learning what compensation [St. Rita's] believes it will take to get those doctors to come to [St. Rita's] so that it can improve its own recruitment efforts.

(Docket No. 76, Ex. 9, p. 2-3). Lehman stated that the type of information Lima Memorial sought was typically only provided to those in St. Rita's on a need to know basis. Lehman specifically referenced two spreadsheets ("SRPS Active Recruiting" and "SRPS Recruitment Worksheet") that she believed if disclosed to Lima Memorial could be used to harm St. Rita's.

{¶39} In Mayer's affidavit, Mayer described generally the type of documents sought by Lima Memorial in its motion to compel. The only documents specifically mentioned were a document "containing patient names and identification numbers for patients referred to Mercy Health physicians" and "a spreadsheet with a worksheet that contains personal information and job descriptions for over 350 Mercy Health employees, used for Mercy Health budgeting purposes." (Docket No. 76, Ex. 10, p. 2).

{¶40} Contemporaneously, St. Rita's filed its response in opposition to Lima Memorial's motion to compel and request for attorney fees. In its response, St. Rita's argued that the motion should be denied because "(1) [Lima Memorial's] request for supplemental searches will cause undue burden and expense to [St. Rita's,] which [Lima Memorial] cannot overcome by a showing of good cause; and (2) Ohio law requires the protection of [St. Rita's] competitively-sensitive information."[2] (Footnote omitted.) (Docket No. 77, p. 1). Regarding its first argument, St. Rita's argued that it had already produced over 5,000 documents and that additional searches would require weeks of time and hundreds of thousands of dollars in expenses. It also argued that the information sought was cumulative and duplicative as it was previously obtained from other sources.

{¶41} On January 19, 2016, the trial court granted Lima Memorial's motion to compel and denied St. Rita's motion for attorney fees.

{¶42} On January 22, 2016, Dr. Almudallal filed a motion for summary judgment as to Lima Memorial's tortious interference claims.

{¶43} Lima Memorial filed its response in opposition to St. Rita's motion to amend the agreed protective order. In its response, Lima Memorial argued that St. Rita's motion should be denied for several reasons. First, Lima Memorial argued that the issue had already been decided by the trial court once the court

---

[2] In regard to its second argument, St. Rita's incorporated its arguments in its motion to amend the agreed protective order, which was filed contemporaneously with its response to Lima Memorial's Motion to Compel. Therefore, those arguments are omitted as they would be repetitive.

granted Lima Memorial's motion to compel, and, therefore, St. Rita's motion was moot. Second, Lima Memorial argued that St. Rita's failed to prove the necessity of an AEO designation. Specifically, Lima Memorial stated that although Lehman, in her affidavit, identified two specific spreadsheets, she failed to show where the competitively-sensitive information was located in those documents sought by Lima Memorial. Additionally, Lima Memorial argued that St. Rita's had never asked the court for an in camera review of any of the documents sought currently or in the past. It also pointed out that the proposed amended protective order would allow St. Rita's to retroactively stamp over 1,000 documents as AEO. Furthermore, according to Lima Memorial, St. Rita's had failed to show specifically how the information sought was confidential. Rather, St. Rita's had only made general claims regarding confidentiality.

{¶44} The third argument Lima Memorial presented was that there was essentially no difference between the terms "Confidential Information" and "Highly Confidential Information" in the proposed protective order. Lima Memorial posited that the latter definition actually described less sensitive information than the former. Finally, the fourth argument Lima Memorial presented was that the current protective order sufficiently protected St. Rita's interests.

{¶45} On February 12, 2016, Lima Memorial filed a motion for a continuance to conduct further discovery before responding to Dr. Almudallal's motion for summary judgment.

{¶46} On February 18, 2016, St. Rita's filed its notice of appeal of the trial court's entry, dated January 19, 2016, granting Lima Memorial's motion to compel. It also filed a motion to stay the order pending its appeal.

{¶47} That same day, Dr. Almudallal filed a response in opposition to Lima Memorial's motion for a continuance.

{¶48} The trial court granted St. Rita's motion to stay on February 24, 2016.

{¶49} That same day, the trial court denied St. Rita's motion to amend the protective order. In its entry, the trial court acknowledged that " '[i]n determining whether to grant a protective order, a trial court must balance the competing interests to be served by allowing discovery to proceed against the harm which may result.' " (Docket No. 92, p. 2, quoting *Arnold v. Am. Natl. Red Cross*, 93 Ohio App.3d 564, 576 (8th Dist. 1994), citing *Doe v. Univ. of Cincinnati*, 42 Ohio App.3d 227, 231 (10th Dist.1988)). The court continued,

> An 'Attorneys' Eyes Only' designation is not the only way to protect information. Trial courts can regulate the discovery by ordering 'that [the] use of the discovered information be limited to the lawsuit' and by 'limit[ing] the persons who have access to the information' or limit the scope of discoverable trade secret information to trial issues only and to restrain, under penalty of

-15-

contempt, use of the disputed information for any purpose other than the instant litigation. *Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc.*, 134 Ohio App.3d 673 at 683, 731 N.E.2d 1209 (1999); *Majestic Steel*, 8th Dist. No. 76521. The Amended Agreed Protective Order filed on December 7, 2015 already provides these types of protections by defining 'confidential information,' providing for the limited purposes for which the confidential information can be used in this lawsuit and providing for sanctions for violations. Upon consideration of the motion and the attachments thereto and plaintiff's response, the Court finds that [St. Rita's] has not met the burden conferred on it by the above-cited authorities to justify the requested amendment and ORDERS that [St. Rita's] motion to amend the protective order is **denied**.

(Emphasis and capitalization sic.) (Footnotes omitted.) (*Id.* at p 2-3).

**{¶50}** On March 8, 2016, St. Rita's filed its notice of appeal of the trial court's entry, dated February 24, 2016, denying its motion for an amended protective order.

**{¶51}** This court consolidated both appeals on March 10, 2016.

**{¶52}** On appeal, St. Rita's presents this court with the following assignments of error.

### *Assignment of Error No. I*

**THE TRIAL COURT ERRED IN GRANTING LIMA MEMORIAL HOSPITAL'S MOTION TO COMPEL NON-PARTY ST. RITA'S MEDICAL CENTER ("SRMC") TO PRODUCE DOCUMENTS THAT CONTAIN HIGHLY CONFIDENTIAL, COMPETITIVELY-SENSITIVE INFORMATION TO ITS DIRECT COMPETITOR WITHOUT ADEQUATE PROTECTION OF THE SENSITIVE INFORMATION. SPECIFICALLY, THE TRIAL COURT ERRED WHEN IT REFUSED TO AMEND THE PROTECTIVE ORDER TO INCLUDE AN "ATTORNEYS**

EYES ONLY" CONFIDENTIALITY DESIGNATION, BECAUSE THE TRIAL COURT APPLIED INCORRECT LAW, AND FAILED TO APPLY APPLICABLE OHIO LAW REQUIRING A BALANCING OF THE COMPETING INTERESTS TO BE SERVED BY ALLOWING DISCOVERY TO PROCEED WITHOUT THE AEO DESIGNATION, AGAINST THE HARM WHICH MAY RESULT.

*Assignment of Error No. II*

THE TRIAL COURT ERRED IN GRANTING LIMA MEMORIAL HOSPITAL'S MOTION TO COMPEL NON-PARTY SRMC TO PRODUCE DOCUMENTS THAT CONTAIN HIGHLY CONFIDENTIAL, COMPETITIVELY-SENSITIVE INFORMATION TO ITS DIRECT COMPETITOR WITHOUT AMENDING THE PROTECTIVE ORDER TO INCLUDE AN "ATTORNEYS EYES ONLY" CONFIDENTIALITY DESIGNATION, WHERE THE TRIAL COURT'S DECISION (a) FAILED TO BALANCE THE COMPETING INTERESTS, (b) CONFERRED AN IMPROPER BURDEN ON SRMC, (c) IGNORED EVIDENCE THAT DEMONSTRATES GOOD CAUSE EXISTS TO AMEND THE PROTECTIVE ORDER, (d) ADOPTED LIMA MEMORIAL HOSPITAL'S PROPOSED ORDER WITHOUT SUBSTANTIVE LEGAL ANALYSIS TO SUPPORT ITS DECISION, AND (e) FAILED TO RECOGNIZE THAT THE PROTECTIONS IN THE CURRENT PROTECTIVE ORDER ARE INADEQUATE HERE.

{¶53} Due to the nature of St. Rita's assignments of error, we elect to address them together.

*Assignments of Error Nos. I & II*

{¶54} In its first and second assignments of error, St. Rita's argues that the trial court erred by denying its motion for an amended protective order and granting Lima Memorial's motion to compel. Specifically, St. Rita's argues that

the trial court failed to apply the applicable law and that it presented sufficient evidence to warrant an amended protective order. We disagree.

**{¶55}** The Rules of Civil Procedure provide liberal discovery provisions. Pursuant to Civ.R. 26(B)(1), the scope of discovery includes "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Notwithstanding this wide scope of permissible discovery, trial courts are given broad discretion in the management of discovery. *See State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 57 (1973). Thus, an appellate court reviews discovery issues pursuant to an abuse of discretion standard. *See Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 31, quoting *Stark v. Govt. Accounting Solutions, Inc.*, 10th Dist. Franklin No. 08 AP-987, 2009-Ohio-5201, ¶ 14. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶56}** Civ.R. 26(C) governs protective orders in Ohio. The rule provides,

Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is

pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Civ.R. 26(C). "In determining whether to grant a protective order, a trial court must balance the competing interests to be served by allowing the discovery to proceed against any harm which may result." *Montrose Ford, Inc. v. Starn*, 147 Ohio App.3d 256, 259 (9th Dist.2002), citing *Arnold*, 93 Ohio App.3d at 576.

{¶57} " 'The burden of establishing good cause for a [P]rotective [O]rder rests with the movant.' " *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 534 (S.D.Ohio 2014), quoting *Nix v. Sword*, 11 Fed.Appx. 498, 500 (6th Cir.2001). "To demonstrate good cause, the movant 'must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements.' " *Id.* " 'The mere presence of "trade secrets" does not automatically entitle the producing party to an AEO [P]rotective [O]rder. The burden remains on the producing party to show that the AEO

protection is warranted.' " *Id.* at 534-535, quoting *Penn, LLC v. Prosper Business Development Corp.*, S.D.Ohio No. 2:10-cv-0993, 2012 WL 5948363, *4 (Nov. 28, 2012). Further, the producing party must state the harm it will suffer with "sufficient particularity," which requires " 'specific demonstrations of fact, supported where possible by affidavits and concrete examples.' " *Id.* at 535, quoting *Penn* at *4.

{¶58} Before we address whether the trial court erred by denying St. Rita's motion for an amended protective order, we must first determine if the trial court misapplied the law. Specifically, St. Rita's argues that the trial court failed to perform the proper balancing test and, therefore, de novo review, and not abuse of discretion, is appropriate. St. Rita's also claims that the trial court's February 24, 2016 entry focused on the incorrect burden. We are not convinced.

{¶59} In its entry denying St. Rita's motion for an amended protective order, the trial court acknowledged that it is a court's duty to balance the interests of allowing discovery to proceed and any harm that could result from it. Further, the court detailed how an AEO designation was not the only way to adequately protect trade secrets from being disclosed in an improper way and cited cases in support. The court indicated that it had considered the motion and all the information attached by both St. Rita's and Lima Memorial and found that St.

Rita's had failed to carry its burden.[3]   Additionally, the February 24, 2016 entry was the court's decision on St. Rita's motion for an amended protective order.  It is well established that the party seeking the protective order has the burden to show why protection is necessary.  *See, e.g.*, *Stout*, 298 F.R.D. at 534.  Thus, the trial court did not err by finding that St. Rita's had the burden to show why its motion should be granted.  Accordingly, we will review the trial court's denial of St. Rita's motion for an abuse of discretion.

{¶60} On appeal, St. Rita's argues that the trial court's decisions were unreasonable, arbitrary, and unconscionable for two reasons: (1) the court failed to balance the interests; and (2) St. Rita's established good cause to amend the protective order.  Regarding the first reason, we have already found that the court performed the proper balancing test when denying St. Rita's motion for an amended protective order.

{¶61} In support of its argument that it established good cause, St. Rita's relies on the affidavits of Lehman and Mayer.  Where St. Rita's argument fails is that the affidavits fail to establish a *specific* showing of harm.  Although Mayer describes the content of the documents sought by Lima Memorial in its motion to compel, he does not describe the documents specifically.  Rather, they are given general names such as "financial projections, strategic initiatives, salary

---

[3] The statement that the court considered the motion and all attachments also dispels St. Rita's argument that the court failed to consider its arguments contained in the affidavits attached to its motion.

information," etc. (Docket No. 76, Ex. 10, p. 2). Importantly, Mayer did refer to two specific documents, though the names of which were omitted, in which he argued were not relevant to the case, for the most part.

{¶62} Lehman's affidavit also lacks specificity. Although Lehman provided a laundry list of ways in which competitors could use the information in a way that harmed St. Rita's, Lehman failed to show a specific harm that would result from St. Rita's disclosing the information to Lima Memorial. Moreover, the only documents she specifically referred to were the "SRPS Active Recruiting" and "SRPS Recruitment Worksheet" spreadsheets. Lehman also merely recited the factors provided in *Stout* without providing any specific details. When a company subject to a discovery request fails to provide specific showings of harm, then it has failed to show a need for additional protection.

{¶63} Compare this case with *Stout*. In *Stout*, an employee brought a class action lawsuit against his employer claiming that it had failed to pay applicable minimum wage and overtime compensation under the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act. 298 F.R.D. at 533. During discovery, the employee sought information regarding how the defendants priced their projects. *Id.* The employer objected arguing that the project hour sheets contained trade secrets and that any disclosure would require an AEO designation. *Id.* at 533-534. In support, the Vice President and Chief Operating Officer ("VP")

of the company filed an affidavit explaining that "the project hour sheets contain estimated hours for the installation of various types of medical equipment." *Id.* at 535. The VP stated that the estimates were used to provide quotes for its customers. The estimates were maintained on a computer protected with a password and were only given to employees when necessary to "plan a particular installation." *Id.* When disclosed, those employees were told not to share the information with anyone. *Id.* Further, the estimates were never distributed to all employees or anyone outside of the defendants' companies. The VP identified five former employees that currently worked for competitors. *Id.* Given the VP's testimony, the district court found that an AEO was appropriate.

**{¶64}** When one compares the information provided by the VP in *Stout* with the information provided by Lehman and Mayer, it becomes clear that St. Rita's has failed to state with specificity and particularity the harm it will suffer by disclosing its trade secrets with Lima Memorial. Thus, the trial court did not err when it found that St. Rita's failed to meet its burden.

**{¶65}** St. Rita's also downplays the protections it currently has in the amended protective order. The current agreed protective order limited the use of trade secrets to this litigation only. It provided that only "qualified persons" were able to view confidential information. The order required that any "qualified person" that received confidential information would have to sign a non-disclosure

agreement before receiving such information. Moreover, the order provided St. Rita's, the disclosing party, with a remedy in the form of contempt if anyone used the information for anything other than the purposes of this litigation or settlement negotiations. Finally, the amended protective order survives this litigation, and, therefore, the trial court retains jurisdiction over Lima Memorial and St. Rita's in the event of a violation of the protective order.

{¶66} In its February 24, 2016 entry, the trial court highlighted some of these protections when discussing the adequacy of the current protective order. Other courts have considered these protections to adequately protect trade secret information. *See Majestic Steel Serv., Inc. v. Disabato*, 8th Dist. Cuyahoga No. 76521, 1999 WL 1206573, *2 (Dec. 16, 1999); *Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc.*, 134 Ohio App.3d 673, 683 (8th Dist.1999). In *Majestic Steel*, the appellate court found that the trial court had abused its discretion by ordering the non-party appellant to disclose its trade secrets without any protections in place. 1999 WL 1206573 at *2. The appellate court gave several acceptable options for the trial court to consider on remand, which included "its discretion to limit the scope of discoverable information to trial issues only and to restrain, under penalty of contempt, use of the disputed information for any purpose other then [sic] the instant litigation." *Id.* Therefore, the trial court did

not abuse its discretion when it denied St. Rita's motion for an amended protective order.

{¶67} Further, because St. Rita's relies on the same arguments as to why the court erred in granting Lima Memorial's motion to compel, we find that the trial court did not abuse its discretion in granting Lima Memorial's motion.

{¶68} Accordingly, we overrule St. Rita's first and second assignments of error.

{¶69} Having found no error prejudicial to the appellant, in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**